J-A24034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIERRA POWELL | : | No. 206 EDA 2024 |

Appeal from the Order Entered December 21, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004540-2023

BEFORE: LAZARUS, P.J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED APRIL 8, 2025**

The Commonwealth appeals from the order denying its motion to refile a murder charge against Tierra Powell ("Powell"). After careful review, we reverse.

On June 9, 2023, Powell shot and killed her roommate, Amber Smith ("Smith") in their shared home in Philadelphia. Police arrested Powell and the Commonwealth charged her with murder, recklessly endangering another person, and possession of an instrument of crime.[1] Following a preliminary hearing, the municipal court judge amended the charges to include voluntary manslaughter[2] and held all charges for trial except for murder, for which it found that the Commonwealth failed to establish a *prima facie* case. The Commonwealth filed a motion to refile the murder charge in the court of

_____

[1] *See* 18 Pa.C.S.A. §§ 2052, 2705, 907.

[2] *See* 18 Pa.C.S.A. § 2503(a)(1).

common pleas, and the trial court held a hearing on the motion. The trial court summarized the evidence and testimony presented at the hearing as follows:

> . . . For purposes of the preliminary hearing only, [defense] counsel stipulated to the medical examiner's report that found the cause of [Smith's] death to be a gunshot wound and the manner of death to be homicide. [Defense c]ounsel also stipulated that the medical examiner would be called as an expert in forensic pathology, and that she would testify that[:] (1) a gunshot wound entered through [Smith's] right outer breast[;] (2) the bullet traveled through the right side of [Smith's] body before landing at her back; (3) no soot or gun powder stippling was observed[;] and (4) [Smith] had a .2 x .2 centimeter abrasion to her right dorsal hand and two faint abrasions to her left ulnar wrist and left elbow.
>
> [T]he Commonwealth called Detective Matthew Burkhimer [("Detective Burkhimer")] as its sole witness. [Detective] Burkhimer testified that he investigated the homicide and he recovered video footage from inside the house. He identified both [Powell] and [Smith] on the video. The video was then played in court.
>
> The entire video footage is 3-1/2 hours long, but the relevant portion runs for only fifty-two minutes (from the 2-hour, 30-minute mark through the 3-hour, 22-minute mark). The footage is filmed from the second-floor hallway. There is a bedroom on the right end of the hallway and a middle bedroom, which is being used as an office, in the middle of the hallway near the top of the stairs. Only the doorway of the middle bedroom is visible.
>
> At the 2-hour, 30-minute mark, [Smith] and [Powell] are heard arguing and yelling at each other. Then [Powell] walks up the stairs and into the office, while she and [Smith] continue to yell at each other. At the 2-hour, 39-minute mark, [Smith] walks up the stairs and enters the office. [Powell] yells, "[Smith], get out my room!" The two women continue to argue. [Powell] yells, "I don't have to tell you anything! . . . I don't have to explain nothing to you. I don't have to do anything, you don't even have

- 2 -

to talk to me! So get out, get out! . . . Cause you're [expletive] annoying!" [Powell] also continues to yell, "Get out of my room!" several more times. [Powell] yells very loudly, while [Smith's] yelling is relatively calm. [Smith] calmly asks twice, "What is wrong with you?" Then [Smith] says, "If you ever put your [expletive] hands on me again, that's going to be your last [expletive] time." [Smith] then exits the office and enters the other bedroom, but she and [Powell] continue arguing.

All is quiet for approximately forty seconds before [Smith] and [Powell] start yelling again. Then all is quiet again, and [Smith] eventually makes a telephone call and walks downstairs. A few minutes later, [Powell] leaves the office to go to the bathroom, but she and [Smith] continue to argue. [Powell] stands at the top of the stairs and yells, "You can [expletive] die now, and I wouldn't [care]. You're a [expletive] bitch!" During the argument, [Powell] repeatedly calls [Smith] an expletive. [Powell] eventually reenters the office.

Just after the 3-hour, 10-minute mark, [Smith] walks upstairs, knocks on the office door, and enters the office. [Smith] is heard saying, "I'm not trying to argue with you or none of that." [Powell] is heard saying, "[Smith], stop touching me." [Smith] then says, "Chill, chill, chill." [Powell] then says, "Get away from me, I'm not playing--." Then comes the sound of a gunshot and a loud thud. [Powell] is heard repeatedly screaming, "Oh my God!" and crying, "[Smith], please!" She is also heard calling the police and providing the address to the 911 operator. While on the phone with 911, [Powell] repeatedly says "[Smith], please." [Powell] tells the 911 operator, "It was an accident, I had my gun and it wasn't on safety and she went to grab it and it went off." The 911 operator is heard instructing [Powell] in doing chest compressions. [Powell] continues to speak to [Smith] and repeatedly begs her to respond.

Once the police and paramedics arrive, [Powell] takes them upstairs to the office. As the paramedics tend to [Smith], [Powell] explains to police what happened: "[We] were arguing, she went, I picked my gun up, she grabbed it, and it went off. Everything happened so fast." [Powell] appears and sounds visibly upset. The video ends shortly thereafter.

[Detective] Burkhimer testified that he took [Powell]'s statement on June 9, 2023. [Powell] explained that she and

- 3 -

[Smith] started arguing. [Powell] stated that [Smith] grabbed her from behind while she was at her desk. [Powell] then stood up and picked up her gun from on top of her desk. [Smith] tried to take the gun from [Powell], and the gun went off.

On cross examination, [Detective] Burkhimer confirmed that [Powell] is yelling, "Get out, get out, get out my room" in the video footage. He also conceded that there is no footage from inside [Powell]'s office. [Detective] Burkhimer reiterated that [Powell] told him that [Smith] tried to grab the gun, and it went off accidentally. He reiterated that [Powell] stated that she did not intend to shoot [Smith]. [Detective] Burkhimer conceded that [Powell] stayed at the crime scene, called police, and cooperated both at the crime scene and during interrogation. He conceded that [Powell] was registered and licensed to carry the gun.

Trial Court Opinion, 3/1/24, at 2-4.

Following the hearing, the trial court determined that the Commonwealth failed to establish a *prima facie* case for murder and denied the motion to refile. The Commonwealth filed a timely notice of appeal,[3] and both it and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issue for our review:

Did the lower court err as a matter of law in concluding that the Commonwealth did not establish a *prima facie* case of murder where the evidence showed that [Powell] shot [Smith] in the chest during a heated argument after telling [Smith] that she did not care if [Smith] died?

Commonwealth's Brief at 3.

_____

[3] We note the Commonwealth appealed pursuant to Pa.R.A.P. 311(d), which provides that in a criminal case, "the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."

The Commonwealth challenges the trial court's determination that it failed to establish a *prima facie* case for murder. An evidentiary sufficiency challenge relating to the Commonwealth's *prima facie* case for a charged crime is a question of law, for which our review is plenary. **See Commonwealth v. Ouch**, 199 A.3d 918, 923 (Pa. Super. 2018).

As this Court has previously explained:

> The purpose of a preliminary hearing is to determine whether the Commonwealth has made out a *prima facie* case for the offenses charged. A *prima facie* case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime. . . .
>
> The Commonwealth establishes a *prima facie* case when it produces evidence that, ***if accepted as true***, would warrant the trial judge to allow the case to go to a jury. The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged. Moreover, ***the weight and credibility of the evidence are not factors at this stage***, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense. Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.

***Id***. (emphasis in original).

First-degree murder is the killing of another with both specific intent and malice. **See** 18 Pa.C.S.A § 2502(a). Third-degree murder is the killing of another with malice.[4] **See id**. at § 2502(c). "Specific intent may be formed

_____

[4] Second-degree murder is inapplicable here as it requires the killing of another during the perpetration of a felony. **See** 18 Pa.C.S.A. § 2502(b).

in an instant . . . and it can be discerned from the conduct and attending circumstances that show the perpetrator's state of mind." **Commonwealth v. Newton**, 318 A.3d 133, 139 (Pa. Super. 2024). Malice "comprehends not only a particular ill-will, but [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." **Commonwealth v. Frye**, 319 A.3d 602, 607 (Pa. Super. 2024) (citation omitted). As such, malice "is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm." **Id**. Pertinently, both "[s]pecific intent to kill and malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body." **Commonwealth v. Jordan**, 65 A.3d 318, 323 (Pa. 2013) (citations omitted).

The Commonwealth initially argues that the trial court erred by determining that it failed to establish a *prima facie* case for first-degree murder. The Commonwealth maintains that the evidence it presented at the preliminary hearing, when viewed in the light most favorable to its case, indicates that Powell used a deadly weapon to shoot Smith in the chest, a vital part of her body, causing her death. The Commonwealth submits that this evidence, without more, supports an inference that Powell possessed both the specific intent to kill and malice at the time she shot Smith so as to establish a *prima facie* case for first-degree murder.

The Commonwealth additionally argues that, even without the benefit of the above-permitted inference, the evidence it presented at the preliminary hearing, when viewed in its favor, established that Powell acted with both specific intent to kill and malice when she shot Smith, noting that: (1) Powell admitted to police that she had her gun on her desk, and that she picked it up when Smith calmly entered her room; and (2) it was Powell who wielded a gun at Smith "after expressing sincere hatred and anger toward" Smith. Commonwealth's Brief at 16. The Commonwealth argues that this evidence satisfied its preliminary burden to show that Powell possessed both the specific intent to kill and malice necessary to establish a *prima facie* case for first-degree murder.

The Commonwealth further argues that, at the very least, the evidence it presented at the preliminary hearing established a *prima facie* case for third-degree murder. The Commonwealth points out that Powell was notably more aggressive and intense than Smith during their recorded argument, and that Powell made statements which suggested her hatred of Smith, such as "you could f**king die now, I wouldn't give a f**k." *Id*. at 15. The Commonwealth asserts that Powell's asymmetric vitriol toward Smith exhibited precisely the type of ill-will and hardness of heart necessary to make a *prima facie* showing that Powell acted with a malicious state of mind when she shot Smith, such that it supported a *prima facie* case for third-degree murder.

The Commonwealth further contends that the trial court improperly viewed the evidence in the light most favorable to Powell, rather than in the

light most favorable to the Commonwealth, as required. The Commonwealth additionally argues that the trial court erred by: (1) crediting Powell's assertion that Smith grabbed her from behind, and thus caused the gun to fire by accident; and (2) concluding that Powell did not intend to shoot Smith because she called the police, begged for Smith to stay alive, and performed chest compressions. The Commonwealth maintains that the trial court could not make credibility determinations or draw defense-favorable inferences at the preliminary hearing stage. Furthermore, the Commonwealth claims that Powell's narrative conflicts with the physical evidence and the medical examiner's report, which establish that Smith was shot in the front breast.

Finally, the Commonwealth argues that the trial court erred by suggesting that it lacked evidence to establish that Powell pointed the gun at Smith because there was no direct video footage of the shooting. The Commonwealth points out that direct video footage of the shooting was unnecessary, given that it could establish a *prima facie* case based on circumstantial evidence.

The trial court determined that the Commonwealth's evidence was insufficient to establish a *prima facie* case for murder, reasoning as follows:

> In the instant case, video evidence establishes that [Smith] and [Powell] engaged in a loud and angry argument that included [Powell] directing multiple expletives toward [Smith]. Testimony and the same video evidence established that [Powell] repeatedly told [Smith] to "get out, get out of my room." However, [Smith] reentered the room at least once. Testimony also established that [Powell] told [Detective Burkhimer] that [Smith] grabbed her from behind and tried to take the gun before it accidentally went off.

> This is the same explanation that [Powell] gave to police at the crime scene. Further, the same testimony and video evidence established that [Powell] remained at the crime scene, called police, and cooperated with police at the scene and during subsequent questioning. Finally, the video evidence establishes that [Powell] expressed shock and horror immediately after [Smith] was shot. While speaking with the 911 operator, [Powell] repeatedly begged [Smith] to stay alive. [Powell] also did chest compressions on [Smith].
>
> In addition, testimony established that there was no video footage available from inside the room where the shooting happened. As a result, the Commonwealth has no evidence that [Powell] directly pointed the gun at [Smith]. Finally, in the video, it is [Smith] who threatens [Powell] when she says, "If you ever put your [expletive] hands on me again, that's going to be your last [expletive] time." The circumstances in the video, [Smith's] threat to [Powell] (even if just a veiled threat), and [Powell]'s reaction and actions after the shooting, all combined do not show that [Powell] acted with intent to kill or malice toward [Smith].

Trial Court Opinion, 3/1/24, at 9-10.

Based on our review, we conclude that the trial court failed to view the evidence in the light most favorable to the Commonwealth's case, as it was required to do when evaluating whether the Commonwealth presented sufficient evidence to establish a *prima facie* case. Rather than giving effect to the inferences reasonably drawn from the evidence which would support a verdict of guilty, the trial court instead improperly viewed the evidence in the light most favorable to Powell and relied on inferences which would support a verdict of not guilty. Moreover, the trial court improperly made credibility determinations with respect to Powell's statements to police, which it did not have the authority to do at the preliminary hearing stage of the proceedings. *See Ouch*, 199 A.3d at 923.

We further conclude that the Commonwealth presented sufficient evidence to establish a *prima facie* case for both first and third-degree murder. Viewing the evidence in the light most favorable to the Commonwealth, and giving effect to the inferences reasonably drawn from the evidence which would support a verdict of guilty, the evidence suggests that Powell picked up and fired a loaded handgun at Smith's chest during a lengthy and heated argument which resulted in Smith's death. As explained above, a specific intent to kill and malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body. **See Jordan**, 65 A.3d at 323. Accordingly, this evidence and its permissible inferences are sufficient to establish a *prima facie* case for first-degree murder.

Moreover, during the argument leading up to the shooting, Powell repeatedly used angry and hateful language towards Smith, and specifically stated that Smith "can [expletive] die now, and I wouldn't [care]." Trial Court Opinion, 3/1/24, at 3. Viewing these statements in the light most favorable to the Commonwealth, we can infer that Powel's language displayed a wickedness of disposition and ill-will towards Smith such that, when Powell shot Smith, she acted with the malice necessary to establish third-degree murder. **See Frye**, 319 A.3d at 607. We may further infer malice from Powell's conduct of wielding a loaded firearm with its safety disabled, during a heated argument, as doing so displayed a conscious disregard of the extremely high risk that she would shoot Smith. **See id**. (stating "[m]alice is present under circumstances where a defendant did not have an intent to kill,

- 10 -

but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm").

For the foregoing reasons, we determine that the Commonwealth presented sufficient evidence to establish a *prima facie* case for both first and third-degree murder. Accordingly, we reverse the trial court's order denying the motion to refile, and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/8/2025